## F. J. AYRES v. WM. DEERING & CO.

### No. 15,099.   (90 Pac. 794.)

### SYLLABUS BY THE COURT.

1. JUDGMENTS—*Default—Enforcement—Misjoinder Not a Defense.* Where a judgment by default is rendered against a defendant in a county other than that of his residence, summons having been served upon him at his home, such proceeding being colorably justified only because the action against him is joined with one against another defendant residing in the county where the suit is brought, a subsequent action brought upon such default judgment cannot be defeated by showing that the petition upon which it was rendered disclosed upon its face that the cause of action against the non-resident was one that could not properly be joined with that against the resident defendant.

2. —— *Insufficient Defenses—Collateral Attack.* Nor can it be shown in defense to an action upon such a judgment that it was rendered while a demurrer filed by the resident defendant was still pending; or that the joinder of the two defendants was collusive, for the purpose of enabling the plaintiff to sue the non-resident defendant outside of the county where he resided; or that after the judgment was rendered against the non-resident defendant the action was dismissed as to the resident defendant.

Ayres v. Deering.

3. EVIDENCE—*Judicial Record of Another State—Authentica-*
*tion.* A copy of a judicial record of another state, not au-
thenticated as required by the federal statute or by section
371 of the Kansas code (Gen. Stat. 1901, § 4819), which re-
lates in terms to the proceedings of the courts of foreign
countries, is not rendered admissible in evidence by being
certified to in accordance with the requirements of section
372 of the code (Gen. Stat. 1901, § 4820), which provides for
the admission in evidence of copies of records required by
law to be kept in any public office, such section having refer-
ence only to records kept under authority of the laws of this
state or of the United States.

Error from Washington district court; WILLIAM T.
DILLON, judge. Opinion filed June 8, 1907. Reversed.

*R. C. Roper,* and *Frederick Powell,* for plaintiff in
error.

*Charles Smith,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Wm. Deering & Co., a corporation,
brought an action against F. J. Ayres upon a judgment
previously rendered in Nebraska. It recovered, and
the defendant prosecutes error.

Complaint is made of the admission in evidence of a
copy of the foreign judgment, which the defendant
claims was not properly authenticated. Whether the
authentication was sufficient or not is immaterial, for
the answer admitted that the judgment had been actu-
ally rendered, but denied its validity.

The essential facts are undisputed. The action in
which the Nebraska judgment was rendered was
brought against one Jackson as the maker, and Ayres
as the guarantor, of a promissory note, in the county
where Jackson resided. Service was made there upon
Jackson, and a summons was sent to another county,
where Ayres lived, and there served upon him. The
Nebraska statute on the subject is like our own, and
such service upon Ayres was permissible only in case
the plaintiff had a right to proceed against the two de-

fendants jointly.  (*Marshall v. Mineral Co.*, 75 Kan. 445, 89 Pac. 905.)  In the absence of a statute allowing it the maker and guarantor of a promissory note cannot be sued together.  (14 Encyc. Pl. & Pr. 451.) While Kansas has such a statute (Gen. Stat. 1901, § 4467), it was shown that Nebraska has not.  (1 Cobbey's Ann. Stat. of Neb. 1903, § 1040.)  It is therefore clear that the service made upon Ayres was unauthorized and could have been set aside upon motion.  He made no appearance, and judgment was rendered against him by default.  The serious question presented is whether the judgment was absolutely void. We think it was merely erroneous.

Ayres had notice of the pendency of the action, given in a way permitted by the statute, if he and Jackson could properly be sued in one action.  The petition was sufficient to bring up for decision the question whether there was a misjoinder.  True, it showed upon its face that in a correct view of the law the two causes of action could not properly be united, and therefore that a summons could not lawfully be served upon Jackson in another county; but whether the joinder was rightful was one of the very matters to be determined.  The fact that the record showed that it was wrongly decided does not render the resulting judgment open to collateral attack.  A similar question was presented in *National Bank v. Town Co.*, 51 Kan. 215, 32 Pac. 902. There an action was brought against a defendant in a foreign county, this course being colorably justified by making a resident of such county a defendant also. But no cause of action whatever was stated against the resident defendant.  The petition, therefore, showed upon its face, as clearly as in the present instance, that the conditions which under the statute would authorize a summons to be sent to another county did not exist.  Nevertheless it was held that the judgment could not be questioned on this account in any other court, except upon review, it being said in the opinion:

"The defendant in such a case ought to take advan-

tage of the defective service by a motion, plea, or otherwise. If the service or the jurisdiction of the court acquired by its process is not challenged in any way before or after judgment, in the court rendering the judgment, a defendant cannot avail himself of a review or correction of such judgment through some other court of the same jurisdiction but having no appellate power." (See, also, *Clevenger v. Figley,* 68 Kan. 699, 75 Pac. 1001, and cases there cited.)

Objections are also made to the judgment on the grounds that it was rendered against Ayres while a demurrer by his codefendant remained undisposed of; that the joinder of Ayres and Jackson as defendants was collusive, the plaintiff uniting them solely in order to enable it to sue Ayres in a county where he did not reside; and that by the dismissal of the action as to Jackson after judgment had been rendered against Ayres jurisdiction over the latter was lost, if it had ever been obtained. These matters are covered by the principle already announced. However sufficient any of these objections might have been if urged in the original proceeding, none of them is available as a defense to an action on the judgment. It is contended that the law of Nebraska is otherwise—that the judgment would be held void there, and should be given no better treatment here. Various Nebraska decisions are cited to support this contention. Most of them deal with direct attacks made upon such a judgment and are therefore inapplicable. In *Hobson v. Cummins,* 57 Neb. 611, 78 N. W. 295, it was intimated, but not decided, that where the record shows on its face a wrongful service a judgment by default based thereon may be attacked collaterally. The commissioner's opinion in *Strowbridge v. Miller,* 4 Neb. (unofficial) 449, 94 N. W. 825, seems to justify raising the question of a collusive misjoinder in that manner. But even if convinced that the Nebraska cases go to the full extent claimed, we should adhere to the conclusion announced. Their persuasive force is not such as to change our view of what the law is and should be in this state.

Ayres v. Deering.

And in order for the defendant to derive a benefit from a rule peculiar to Nebraska it would be necessary for him to plead and prove its existence. (*Hunter's Adm'r v. Ferguson's Adm'r*, 13 Kan. 462.) This was not done, and therefore the Nebraska adjudications have no controlling effect.

Although the judgment was valid when rendered, inasmuch as the action upon it was brought more than six years from that date it was necessary for the plaintiff to show that it had been kept alive by the issuance of an execution. For this purpose a copy of an execution was offered in evidence and was admitted over the defendant's objection that it was not properly authenticated. It was not authenticated either in accordance with the federal statute relating to the judicial records of a sister state or with section 371 of the Kansas code (Gen. Stat. 1901, § 4819), which refers in terms to court records of foreign countries but is held to apply as well to those of other states of the union. (*Case v. Huey, Adm'r*, 26 Kan. 553.) Its admission is defended upon the ground that it was certified so as to meet the requirements of section 372 of the code (Gen. Stat. 1901, § 4820) with respect to copies of "papers authorized or required by law to be filed or recorded in any public office, or of any record required by law to be made or kept in any such office." A similar section (Code, § 377; Gen. Stat. 1901, § 4825) regarding copies of proceedings had before a justice of the peace has been said to apply solely to domestic proceedings— those had before justices of the peace of this state. (*Case v. Huey, Adm'r, supra.*) We think the provisions of section 372 are intended to apply only to records kept under authority of the laws of Kansas or of the United States, and that the compliance therewith did not render the copy of the Nebraska execution admissible in evidence. For the error in admitting it the judgment must be reversed and a new trial awarded.