STATE, EX REL. RICHARD C. MEISSNER, RELATOR, v. WILLIAM D. McHUGH, JR., ELECTION COMMISSIONER OF DOUGLAS COUNTY, ET AL., RESPONDENTS.

FILED OCTOBER 20, 1930. No. 27754.

*Patrick & Smith,* for relator.

*T. J. McGuire, contra.*

DAY, J.

This is a special proceeding before a justice of the supreme court, under section 2119, Comp. St. 1922, as amended by section 3, ch. 108, Laws 1925, wherein Richard C. Meissner, as relator, seeks a summary order against the respondent, William D. McHugh, Jr., and Albert E. May, election commissioner and deputy election commissioner of Douglas county, respectively, to accept relator's acceptance of a nomination for county attorney of Douglas county by virtue of a petition filed and alleged to be in conformity to the provisions of section 2098, Comp. St. 1922, as amended by chapter 98, Laws 1927, and to place relator's name upon the official ballot as a candidate for said office to be voted on by the electors of said county at the election on November 4, 1930. The respondents filed a motion to dismiss, for that the justice of the supreme court had no jurisdiction over the subject-matter nor the parties in this case.

The above mentioned statute under which this special proceeding was instituted, in so far as applicable, is as

follows: "All certificates of nomination or nomination statements, which are in apparent conformity with the provisions of this article, shall be deemed to be valid, unless objections thereto shall be duly made in writing within ten days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence as given in the certificate of nomination or in the nomination affidavits of such persons, on file in that office. * * * The officer with whom the original certificate was filed, or who made an affidavit to the original nominating statement, shall, in the first instance, pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by the county court, or by a judge of the district court, or a justice of the supreme court at chambers, on or before the second Wednesday preceding the election. Such order may be made summarily upon application of any party interested, * * * and upon such notice as the court or judge may require. The decision of the secretary of state, or the order of the judge or supreme court justice, shall be binding on all other county, municipal or other officers with whom certificates of nomination are filed."

The first question for determination is that of the jurisdiction of a justice of the supreme court over the subject-matter and the parties in this proceeding. That portion of the statute conferring jurisdiction upon a justice of the supreme court was incorporated in our statutes as early as 1891. The exact language has survived the changes of numerous amendments to our election laws since that time. See section 11, ch. 24, Laws 1891. The power and authority conferred by this provision is judicial and not quasi-political and administrative. Section 1, art. II of the Constitution, dictates: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others except as hereinafter expressly directed or permitted." If, there-

fore, the authority conferred were quasi-political or administrative, it would be in violation of the above constitutional provision. It will be presumed that the legislature did not intend to violate the Constitution, and a statute will, if possible, be so construed as to make it conformable to the Constitution. *Enos v. Hanff*, 98 Neb. 245; *Burgess-Nash Bldg. Co. v. City of Omaha*, 116 Neb. 862. The conclusion is inevitable that the power conferred upon a justice of the supreme court by the legislative act is judicial. It has been so construed by our supreme court. *Porter v. Flick*, 60 Neb. 773; *State v. Hallowell*, 77 Neb. 610.

A county court, a district judge, or a justice of the supreme court at chambers, in a hearing in the matter of the validity of the objections to a certificate of nomination or nomination statements is sitting as a court inferior to the supreme court. This is strictly a special statutory proceeding, somewhat akin to mandamus. See opinion by Justice Good, *State v. Marsh*, 117 Neb. 579. Sometimes, according to the relief asked, it is in the nature of a mandatory injunction. See *State v. Marsh, ante,* p. 287, opinion by Chief Justice Goss. It could not be a mandamus action unless it be supposed that the legislature intended to confer upon county courts and judges of the district court and justices of the supreme court at chambers the power to issue peremptory writs of mandamus. The authority and power conferred by this statute upon a county court, a judge of the district court, and a justice of the supreme court, is concurrent and equal. The statute expressly provides that an order made by any one of these by virtue thereof shall be binding upon the other. A justice of the supreme court does not carry with him into the hearing of such a case any of the perogatives or powers or authority expressly and exclusively conferred by the Constitution upon the supreme court. In this special proceeding he sits as a tribunal inferior to the supreme court. Section 1, art. V of the Constitution, says: "The judicial power of the state shall be vested in the supreme court, district courts, county courts, justices of the peace, and such other courts inferior to the supreme court as may be created by law." Again, section

24, art. I of the Constitution, provides: "The right to be heard in all civil cases in the court of last resort, by appeal, error, or otherwise, shall not be denied." Appeals are not taken from one court to another of equal jurisdiction. Consequently, a justice of the supreme court in this sort of proceeding must be sitting as an inferior court. It has been seriously urged that an order made under this statute is not subject to review. The intention of the law, in view of the constitutional provision herein cited, could not be to provide that orders in such a special and extraordinary procedure as this should not be subject to review. This proceeding has all the attributes of a civil action; but, even so, it is made a civil action by statute. In proceedings under a special statute, where a civil action is given, and where the statute designates by name or otherwise the kind of action, but does not prescribe the mode of proceeding therein, such action shall be prosecuted in conformity to the Code: "Where, by general or special statute, a civil action, legal or equitable, is given and the mode of proceeding therein is prescribed, this Code shall not affect the proceedings under such statute, until the legislature shall otherwise provide; but in all such cases, as far as may be consistent with the statute giving such action, and practicable under this Code, the proceedings shall be conducted in conformity thereto. Where the statute designates by name or otherwise the kind of action, but does not prescribe the mode of proceedings therein, such action shall be commenced and prosecuted in conformity to this Code; where the statute gives an action, but does not designate the kind of action, or prescribe the mode of proceeding therein, such action shall be held to be the civil action of this Code and proceeded in accordingly." Section 9525, Comp. St. 1922, the statute under which this special action was instituted, does not prescribe the mode of procedure, and it must therefore be prosecuted in conformity to the Code of Civil Procedure. The Code provides: "Actions for the following causes must be brought in the county where the cause or some part thereof arose: * * * Second. An action against a public officer, for an act done by him by virtue of or under

color of his office, or for any neglect of his official duty." Comp. St. 1922, sec. 8558. Section 8563, Comp. St. 1922, provides, with some exceptions, under which this action does not come: "Every other action must be brought in the county in which the defendant, or some one of the defendants, resides or may be summoned."

The respondents in this case are public officers and this civil action is brought against them by virtue of their office. The cause of action arose in Douglas county. There it was they refused to accept the relator's acceptance of a nomination by petition. This section of the statute was considered by the court in *Harrison v. Cheney*, 105 Neb. 821. The reason for the statute was so well stated in the opinion by Letton, J., that we quote it here: "Public officers should not be required to leave the county where the proper discharge of their official duties requires their presence to defend actions based on complaints as to the performance of such duties, except for cogent reasons." See, also, *Vennum v. Huston*, 38 Neb. 293, and *State v. Hill*, 38 Neb. 698. In *State v. Marsh*, 117 Neb. 579, and *State v. Marsh, ante*, p. 287, this question was not involved because the secretary of state was the respondent. In no case has a justice of the supreme court assumed jurisdiction of a case involving a public officer, requiring such officer to defend his official act in a proceeding under this statute outside of the county in which the cause of action arose. There is no cogent reason why under this proceeding public officers should be brought from remote counties of the state to defend their official acts before a judge of the supreme court sitting at chambers in the capitol, located in Lancaster county. Such a rule would require the county clerk of Sioux county, the county farthest removed from the capitol, to come here to defend his official act in refusing to accept a nomination petition of a candidate for the least important of the precinct offices. Even in this case from Douglas county, where the distance is not so great, many reasons suggest themselves to commend this statutory rule, where we take judicial notice of the fact that ten judges who are authorized to act, under the statute herein invoked, live there and con-

tinually perform their judicial duties within the county. Public officers and necessary witnesses are compelled to come a considerable distance with a consequent inconvenience. Moreover, the legislature, recognizing that it was against the public interest to compel public officers to defend their official acts in a tribunal far distant, have fixed the venue for such actions in section 8558, Comp. St. 1922, and their act is conclusive.

Questions relating to the ruling of the election commissioner as to the sufficiency of the petition for nomination of the relator were argued by the able counsel who presented this case. Could a signer of said petition remove his name by affidavit averring misapprehension and mistake in the inducement to sign after the time for filing a new petition had expired? And were electors, who were not registered as required in the city of Omaha, in order to vote, eligible to sign such a petition? Having reached the conclusion as to jurisdiction, which seems to us unanswerable, we decline to pass upon these questions. The desire of the relator to offer his services as county attorney to the electors of Douglas county at the general election to be held November 4, 1930, appeals to us as a laudable ambition. However, for the reasons heretofore stated, his petition must be dismissed.

PETITION DISMISSED.